UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------
E.S., obo, D.A.M.S.,

                          Plaintiff,          DECISION AND ORDER
                                              1:22-cv-00345-GRJ
          v.

COMMISSIONER OF SOCIAL SECURITY,

                          Defendant.
-------------------------------------------------------
GARY R. JONES, United States Magistrate Judge:

          In April of 2014, Plaintiff Liz E.S.[1] applied for Child Supplemental

Security Income benefits under the Social Security Act on behalf of her

son, D.A.M.S. ("Claimant"). The Commissioner of Social Security denied

the application.  Plaintiff, represented by Ny Disability, LLC, Daniel Berger,

Esq., of counsel, commenced this action seeking judicial review of the

Commissioner's denial of benefits under 42 U.S.C. §§ 405 (g) and 1383

(c)(3).  The parties consented to the jurisdiction of a United States

Magistrate Judge. (Docket No. 17).

          This case was referred to the undersigned on October 25, 2022. The

parties filed a Joint Stipulation in lieu of motions for judgment on the

---

[1] Plaintiff's name has been partially redacted in compliance with Federal Rule of Civil
Procedure 5.2 (c)(2)(B) and the recommendation of the Committee on Court
Administration and Case Management of the Judicial Conference of the United States.

pleadings.  For the following reasons, the Commissioner is granted

judgment on the pleadings and this case is dismissed.

## I.  BACKGROUND

### A.    Administrative Proceedings

Plaintiff applied for benefits on behalf of Claimant on April 23, 2014,

alleging disability beginning October 1, 2013. (T at 67, 196-205).[2]  Plaintiff's

application was denied initially and on reconsideration.  She requested a

hearing before an Administrative Law Judge ("ALJ").

Hearings were held on April 12, 2016, and June 9, 2016, before ALJ

Lynn Neugebauer. (T at 43-48, 49-66).  ALJ Neugebauer issued a decision

on March 16, 2017, finding Claimant not disabled within the meaning of the

Social Security Act. (T at 9-35).

The Appeals Council denied review on June 29, 2017. (T at 1-8).

Plaintiff commenced an action for review in the United States District Court

for the Southern District of New York. (Case No. 17-CV-6573).

On July 10, 2018, the Honorable Lisa Margaret Smith, United States

Magistrate Judge, ordered a remand for further proceedings by stipulation

of the parties. (T at 878-79).  A further administrative hearing was held on

November 5, 2019, before ALJ Kimberly Schiro. (T at 562-82).

---

[2] Citations to "T" refer to the administrative record transcript at Docket No. 14.

*B.    ALJ Schiro's Decision*

On December 5, 2019, ALJ Schiro issued a decision denying the application for benefits. (T at 528-61).  The ALJ noted that Claimant was a "preschool" child on April 23, 2014, when the application was filed, and was a "school-age" child at the time of the decision. (T at 536).  Claimant had not engaged in substantial gainful activity since the application date. (T at 536).

The ALJ found that Claimant's attention deficit hyperactivity disorder and oppositional defiant disorder were severe impairments as defined under the Social Security Act. (T at 536).

However, the ALJ found that Claimant did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (the "Listings"). (T at 536).  The ALJ also concluded that Claimant did not have an impairment or combination of impairments that functionally equaled the severity of the Listings. (T at 537).

As such, the ALJ found that Claimant had not been under a disability, as defined under the Social Security Act, since the application date and was therefore not entitled to benefits. (T at 533).  On November 15, 2021,

the Appeals Council denied Plaintiff's request for review, making ALJ Schiro's decision the Commissioner's final decision. (T at 516-23).

C.    Procedural History

Plaintiff commenced this action, by and through her counsel, by filing a Complaint on January 13, 2022. (Docket No. 1).  On October 21, 2022, the parties, through counsel, filed a Joint Stipulation in lieu of motions for judgment on the pleadings. (Docket No. 21).

## II.  APPLICABLE LAW

A.    Standard of Review

"It is not the function of a reviewing court to decide de novo whether a claimant was disabled."  *Melville v. Apfel*, 198 F.3d 45, 52 (2d Cir. 1999). The court's review is limited to "determin[ing] whether there is substantial evidence supporting the Commissioner's decision and whether the Commissioner applied the correct legal standard."  *Poupore v. Astrue*, 566 F.3d 303, 305 (2d Cir. 2009) (per curiam).

The reviewing court defers to the Commissioner's factual findings, which are considered conclusive if supported by substantial evidence. *See* 42 U.S.C. § 405(g). "Substantial evidence" is "more than a mere scintilla" and "means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Lamay v. Commissioner of Soc. Sec.*,

562 F.3d 503, 507 (2d Cir. 2009) (internal quotations omitted) (quoting

*Richardson v. Perales*, 402 U.S. 389, 401 (1971)).

"In determining whether the agency's findings are supported by

substantial evidence, the reviewing court is required to examine the entire

record, including contradictory evidence and evidence from which

conflicting inferences can be drawn."  *Talavera v. Astrue*, 697 F.3d 145,

151 (2d Cir. 2012) (internal quotations omitted).

"When there are gaps in the administrative record or the ALJ has

applied an improper legal standard," or when the ALJ's rationale is unclear,

remand "for further development of the evidence" or for an explanation of

the ALJ's reasoning is warranted.  *Pratts v. Chater*, 94 F.3d 34, 39 (2d Cir.

1996).

> ### B.    Standard for Disability Claims for Children

To qualify for SSI benefits, a child under the age of eighteen must

have "a medically determinable physical or mental impairment, which

results in marked and severe functional limitations, and which can be

expected to result in death or which has lasted or can be expected to last

for a continuous period of not less than 12 months." 42 U.S.C. §

1382c(a)(3)(C)(i).

The Social Security Regulations provide a three-step sequential analysis to determine whether a child is disabled and eligible for benefits. 20 C.F.R. § 416.924(a)-(d); *see Pollard v. Halter*, 377 F.3d 183, 189 (2d Cir. 2004). First, the ALJ considers whether the child is engaged in "substantial gainful activity." 20 C.F.R. § 416.924(b). Second, the ALJ determines whether the child has a "medically determinable impairment(s) that is severe," which is defined as an impairment that causes "more than minimal functional limitations." *Id*. § 416.924(c). Third, if the child has a severe impairment(s), the ALJ must then decide whether the impairment meets or "medically" or "functionally" equals a disability listed in the regulatory "Listing of Impairments." Id. § 416.924(c), (d); *see also id*. at Part 404, Subpart P, App. 1.

To demonstrate functional equivalence, the child must exhibit a "marked" limitation in two of six functional domains described in the regulations, or an "extreme" limitation in one of the domains. 20 C.F.R. § 416.926a(a) (2017); *see Pollard*, 377 F.3d at 190.

The first five domains consider the child's ability to acquire and use information, attend and complete tasks, interact and relate with others, move about and manipulate objects, and care for himself. 20C.F.R. §

416.926a(b)(1)(i)-(v) (2017). The sixth domain considers the child's health and physical well-being. Id. § 416.926a(b)(1)(vi).

A child has a "marked" limitation when the impairment "interferes seriously with [the child's] ability to independently initiate, sustain, or complete activities." 20 C.F.R.§ 416.926a(e)(2)(i) (2017). "'Marked' limitation . . . means a limitation that is 'more than moderate' but 'less than extreme.'" Id. An "'extreme'" limitation is present when the impairment "interferes very seriously with [the child's] ability to independently initiate, sustain, or complete activities." Id. § 416.926a(e)(3)(i).

### III.  DISCUSSION

Plaintiff offers two main arguments in support of her request for reversal of the Commissioner's denial of benefits.  First, she contends that the ALJ erred in concluding that Claimant does not have an impairment or combination of impairments that functionally equals the severity of a medical Listing.  Second, Plaintiff argues that the ALJ did not properly assess her credibility.

### A.    *Functional Equivalence Analysis*

In completing the functional equivalence analysis, the ALJ found that Claimant had less than marked limitation in acquiring and using information; less than marked limitation in attending and completing tasks;

marked limitation in interacting and relating with others; no limitation in moving about and manipulating objects; less than marked limitation in the ability to care for himself; and no limitation in health and physical well-being. (T at 546-553).

Plaintiff challenges the ALJ's analysis, arguing that it was based on an improper discounting of medical opinion evidence from Claimant's treating providers. This Court will summarize the opinion evidence and then address the ALJ's consideration of that evidence.

>    1.    *Dr. Castells*

Dr. Salvador Castells, Claimant's treating pediatrician, completed a medical/functional assessment form in June of 2016. Dr. Castells noted Claimant's diagnoses of ADHD and oppositional defiant disorder. (T at 350). He opined that Claimant had marked limitation in acquiring and using information; moderate limitation in interacting and relating with others; moderate limitation in attending and completing tasks; some marked impairment in caring for himself; moderate limitation in moving about and manipulating objects; and some marked limitation in health and physical well-being. (T at 350-54).

Dr. Castells completed another assessment form in July of 2019. He did not rate the domains of function, but reported that medication had

helped reduce Claimant's hyperactivity. (T at 994).  Dr. Castells opined that

Claimant had moderate developmental and mental/intellectual impairment;

moderate behavioral impairment; and mild sensory and physical

impairment. (T at 995-96).

### 2. N.P. Dressekie

In August of 2019, Seth Dressekie, a psychiatric-mental health nurse

practitioner, completed a mental and psychological impairment evaluation

form.  NP Dressekie indicated that he had been treating Claimant for a

period of approximately eight (8) months. (T at 988).  He noted diagnoses

of ADHD (combined type), oppositional defiant disorder, and unspecified

disruptive-impulse conduct disorder. (T at 988).

NP Dressekie described Claimant as hyperactive, impulsive, and

occasionally aggressive at home. (T at 988). Medications had helped

reduce Claimant's hyperactivity, although he continued to make

"aggressive statements" and remained uncooperative with teachers and his

mother. (T at 989).

NP Dressekie assessed marked limitation in the domains of acquiring

and using information; attending and completing tasks; interacting and

relating with others; and in caring for himself. (T at 989-990).  He opined

that Claimant had less than marked limitation in moving about and

manipulating objects and with respect to his health and physical well-being. (T at 991).

### 3.   SW Vazquez

In June of 2019, Pedro Vazquez, a licensed clinical social worker, completed a mental and psychological impairment evaluation form.  Mr. Vazquez had been treating Claimant for approximately six (6) weeks at the time. (T at 346).

Mr. Vazquez opined that Claimant had marked limitation in acquiring and using information; attending and completing tasks; and interacting and relating with others. (T at 347-48).  He assessed moderate impairment in caring for self and less than marked limitation in moving about and manipulating objects and health and physical well-being. (T at 349).

### 4.   ALJ's Analysis

The ALJ found that Claimant had marked limitation in interacting and relating with others. (T at 550).

Plaintiff argues that a proper consideration of the medical opinion evidence outlined above would have led the ALJ to find a marked limitation in at least one other domain of function. For the following reasons the Court finds Plaintiff's arguments unavailing.

### a.   Acquiring and Using Information

In this domain, the Commissioner must consider how well the child acquires or learns information and how well they use the information they have learned. 20 C.F.R. § 416.926a (g)(1).

A school-age child "should be able to learn to read, write, and do math, and discuss history and science."  The child demonstrates what they have learned in academic situations by "reading about various subjects and producing oral and written projects, solving mathematical problems, taking achievement tests, doing group work, and entering into class discussions." The child uses the skills in daily living and the community by, for example, "reading street signs, telling time, and making change." A school-age child should also be able "to use increasingly complex language (vocabulary and grammar) to share information and ideas with individuals or groups, by asking questions and expressing [their] own ideas, and by understanding and responding to the opinions of others." 20 C.F.R. § 416.926a (g)(2)(iv).

The ALJ found that Claimant had less than marked limitation in acquiring and using information. (T at 546-47).

Dr. Castells, NP Dressekie, and Mr. Vazquez all assessed marked limitation in this domain. (T at 347, 352, 989).

The ALJ reasonably concluded that the record, which contains limited treatment notes from Dr. Castells, is not consistent with marked limitation in this domain.  Notably, medication therapy notes for a nearly three (3) year period consistently described Claimant's symptoms as "adequately controlled" with medication, with no side effects. (T at 1135, 1144, 1158, 1178, 1200, 1210, 1240, 1268, 1279, 1307, 1334, 1374, 1386, 1395, 1411, 1438, 1458).

Moreover, Claimant's report card for the 2018-2019 school year evidenced that he was proficient in all academic areas, although he remained delayed in terms of managing his time and working in an organized manner. (T at 975-76).

### b.    *Attending and Completing Tasks*

In this domain, the Commissioner considers how well the child is "able to focus and maintain … attention, and how well [they] begin, carry through, and finish … activities, including the pace at which [they] perform activities and the ease with which [they] change them." 20 C.F.R. § 416.926a(h).

School-age children should be able to "focus … attention in a variety of situations in order to follow directions, remember and organize … school materials, and complete classroom and homework assignments."  They

"should be able to concentrate on details and not make careless mistakes in [their] work (beyond what would be expected in other children … who do not have impairments)."  The school-age child "should be able to change … activities or routines without distracting [themselves] or others, … stay on task and in place when appropriate, … [and] sustain … attention well enough to participate in group sports, read by [themself], and complete family chores." The child "should also be able to complete a transition task (e.g., be ready for the school bus, change clothes after gym, change classrooms) without extra reminders and accommodation."  20 C.F.R. § 416.926a(h)(2)(iv).

The ALJ found that Claimant had less than marked limitation in attending and completing tasks.  (T at 548-49).

The ALJ's view is consistent with the opinion of Dr. Castells, as the treating physician assessed only moderate impairment in Claimant's ability to attend to and complete tasks. (T at 353).  The ALJ reviewed the record, recognized documented complaints of hyperactivity and inattention, but reasonably found that Claimant's symptoms improved significantly on medication, leading to generally proficient school performance and better behavior at home and school. (T at 548-49).

### c.    Moving About and Manipulating Objects

The ALJ assessed no limitation in Claimant's ability to move about and manipulate objects. (T at 551).  None of the treating providers assessed marked limitation in this domain and Plaintiff does not challenge this aspect of the ALJ's decision.

### d.    Caring for Self

In this domain, the Commissioner considers how well the child is able to "maintain a healthy emotional and physical state, including how well [they] get [their] physical and emotional wants and needs met in appropriate ways; how [they] cope with stress and changes in [their] environment; and whether [they] take care of [their] own health, possessions, and living area." 20 C.F.R. § 416.926a(k).

School-age children are expected to "be independent in most day-to-day activities (e.g., dressing …, bathing ….), although [they] may still need to be reminded sometimes to do these routinely; [they] should begin to recognize that [they] are competent in doing some activities and … have difficulty with others; [they] should be able to identify those circumstances when [they] feel good about [themselves] and when [they] feel bad; [they] should begin to develop understanding of what is right and wrong, and what is acceptable and unacceptable behavior;  [they] should begin to

demonstrate consistent control over [their] behavior, and … be able to avoid behaviors that are unsafe or otherwise not good for [them]." 20 C.F.R. § 416.926a(k)(2)(iv).

The ALJ found less than marked limitation in Claimant's capacity to care for himself. (T at 552).  Dr. Castells assessed some marked impairment in this domain, as related to Claimant's tendency toward hurtful behavior toward himself and ability to use facilities properly (e.g. public phones, bathrooms, etc). (T at 353).  NP Dressekie found marked limitation in Claimant's ability to maintain proper hygiene and personal care, and with respect to following prescribed medical treatment and proper nutrition. (T at 990).  Mr. Vazquez assessed moderate limitation in this domain, noting concerns about self-injurious behavior, hygiene, and following medical treatment and proper nutrition. (T at 348).

The ALJ carefully reviewed the record and recognized evidence of impulse control, oppositional responses, and aggressive behavior. (T at 552).

Again, however, the ALJ reasonably read the record as demonstrating significant symptom improvement with medication, leading to a decrease in behavioral challenges at home and in school. (T at 552). Claimant's report card evidenced that he consistently made an effort to

help others, asked for help when needed, respected school rules, and worked well in the school community. (T at 976).

> e.    *Health & Physical Well-Being*

This domain considers the cumulative physical effects of the child's physical and mental impairments (and associated treatments and therapies) that were not otherwise considered as part of the foregoing analysis. 20 C.F.R. § 416.926a(*l*).

The ALJ found no limitation as to Claimant's health and physical well-being. (T at 553).  Dr. Castells indicated marked limitations as to certain aspect of this domain, noting concern about Claimant's ability to concentrate and pay attention and need for specific structure and environmental conditions. (T at 354-55).  NP Dressekie and Mr. Vazquez both assessed less than marked limitation in this domain (T at 349, 991).

The ALJ cited extensive evidence of well-controlled symptoms, no physical limitations, improved behavior at home and school, and minimal medication side effects in support of the conclusion that Claimant had no limitation in this domain. (T at 29).

Additional support for the ALJ's decision is found in the assessment of Dr. Alan Meyers, a non-examining pediatrician, who reviewed the record and responded to interrogatories from the ALJ.  Dr. Meyers described

Claimant's ADHD and ODD as "well-documented" in the record. (T at 1518).  He opined that Claimant had less than marked limitation in all the domains of functioning. (T at 1522-23).

Because the instant claim was filed prior to March 27, 2017, the treating physician's rule still applied.  Under that rule, an opinion from a treating physician is entitled to controlling weight as to the nature and severity of an impairment, provided it "is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record." 20 C.F.R. §§ 404.1527(c)(2); 416.927(d)(2).

Here, for the reasons outlined above, the Court concludes that the ALJ's decision to discount certain aspects of Dr. Castells' opinion is supported by substantial evidence and is consistent with applicable law. Particularly, Dr. Castells' highly restrictive assessment is not well-supported by his own treatment notes or clinical findings, is inconsistent with a reasonable reading of the record (which demonstrates significant symptom improvement and improved performance at home and school), and is contradicted by other medical evidence of record, including Dr. Meyers' assessment.

Moreover, Dr. Castells' second opinion (from July of 2019), in which he found only moderate developmental and mental/intellectual impairment; moderate behavioral impairment; and mild sensory and physical impairment (T at 995-96), is consistent with the ALJ's conclusion that Claimant's symptoms had materially improved with medication.

Lastly, the ALJ gave proper consideration to the opinions of the treating social worker and treating nurse practitioner.  Under the rules applicable to this case, neither Mr. Vazquez nor NP Dressekie are considered "acceptable" medical sources.  Their opinions, however, are "important and should be evaluated on key issues such as impairment severity and functional effects." *Maldonado v. Berryhill*, No. 16-CV-165, 2017 WL 946329, at *24 (S.D.N.Y. Mar. 10, 2017).

For the reasons outlined above, the Court concludes that the ALJ provided sufficient reasons for declining to accept the full extent of functional limitations assessed by Mr. Vazquez and NP Dressekie.

The Court, accordingly, finds no error in the ALJ's functional equivalence analysis.

## B.   Credibility Analysis

"As a fact finder, the ALJ is free to accept or reject testimony of a claimant's parent."  *Hamedallah ex rel. E.B. v. Astrue*, 876 F. Supp. 2d 133,

151–52 (N.D.N.Y. 2012)(citing *Williams on behalf of Williams v. Bowen*, 859 F.2d 255, 260 (2d Cir.1988)). In so doing, "the ALJ must make specific findings concerning the credibility of the parent's testimony, just as he would if the child were testifying." *Id*.

Plaintiff argues that the ALJ did not give sufficient consideration to her hearing testimony regarding the nature and extent of Claimant's limitations.  This argument, however, is belied by the record.

The ALJ summarized Plaintiff's hearing testimony regarding Claimant's history of challenges at school and at home, including inattention, aggressive behavior, and poor performance. (T at 539).  The ALJ also recognized Plaintiff's testimony of symptom improvement with medication, which is amply supported by the record. (T at 539).   The ALJ made specific reference to Plaintiff's testimony when explaining her findings as to each of the domains of functioning. (T at 547-53).

To the extent Plaintiff's testimony can be interpreted as arguably establishing marked limitation in two or more of the domains of functioning (or extreme limitation in any domain), the ALJ provided sufficient reasons for not accepting that conclusion, including (as discussed above) the treatment record, Claimant's improved school performance, Plaintiff's own

testimony about Claimant's symptom management and improvement, and the opinion of Dr. Meyers.

The Court, therefore, finds no error in the ALJ's assessment of Plaintiff's credibility.

## IV.  CONCLUSION

For the foregoing reasons, the Commissioner is GRANTED Judgment on the Pleadings and this case is DISMISSED. The Clerk is directed to enter final judgment and then close the file.


Dated: March 27, 2023      *s/Gary R. Jones*

GARY R. JONES
United States Magistrate Judge